KAB

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Arik Bennett,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>Mark Brnovich, et al.,<br><br>　　　　　　Defendants. | No.  CV 20-01945-PHX-SPL (MHB)<br><br>**ORDER** |

Plaintiff Arik Bennett, who is represented by counsel, brought this civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 10.) The Parties cross-move for summary judgment. (Docs. 80, 84.)

**I.　Background**

On screening under 28 U.S.C. § 1915A(e)(2), the Court determined that Plaintiff stated a Fourth Amendment claim for illegal search and seizure against Defendant Sandoval in Count One based on the allegations that Defendant Sandoval knowingly presented false information in a probable cause statement. (Doc. 11.)

**II.　Summary Judgment Standard**

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The movant bears the initial responsibility of presenting the basis for its motion and identifying

those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co.*, *Ltd. v. Fritz Co.*, *Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co.*, *Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In its analysis, the court must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor. *Id.* at 255. The court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

**III. Facts**

Defendant Detective Gerardo Sandoval (Sandoval), in the course and scope of his employment with the Arizona Department of Public Safety (DPS), authored search warrant #2018-010924 (the Warrant), which was signed by the Honorable Melissa Zabor on October 16, 2018. (Doc. 85 at 3 ¶ 1; Doc. 90 ¶ 1.) The Warrant detailed Sandoval's months-long investigation, beginning April 24, 2018, into alleged money laundering, fraudulent schemes, participation in a criminal syndicate, and conspiracy. (Doc. 85 at 4 ¶ 2; Doc. 90 ¶ 2.) The investigation began with a report of a stolen rental car from Enterprise

car rentals. (Doc. 85 at 4 ¶ 3; Doc. 90 ¶ 3.)  The car was rented using fraudulent identification, and the investigation ultimately led to an individual named William Jennings. (Doc. 85 at 4 ¶ 4; Doc. 90 ¶ 4.)

During the course of his investigation, Sandoval interviewed Jennings, who stated he worked for a large fraud ring run by Joseph Miller. (Doc. 85 at 4 ¶ 5; Doc. 90 ¶ 5.) In the warrant, Sandoval detailed Jennings's history of criminal activity, as well as his alleged criminal activity in the investigation, which included the possession and use of over fifteen stolen identities and his admission to being involved with "The Game" of identity theft and credit card fraud since 2015. (Doc. 85 at 4 ¶ 6; Doc. 90 ¶ 6.) The warrant also details Joseph Miller's history of felony convictions, the concurrent investigation by Tempe Police Department for identity theft and fraud schemes, and the search of Miller's house that uncovered numerous items of evidence involving identity theft, forgery, fraudulent schemes, and illegal control of an enterprise. (Doc. 85 at 4 ¶ 7; Doc. 90 ¶ 7.)

After the search of his home, Miller engaged in a number of "free talks" with detectives, where he identified Michael Stoian as a person to whom he would sell cell phones and laptops, purchased with stolen identities, and Stoian would then sell those items locally and overseas. (Doc. 85 at 4 ¶ 8; Doc. 90 ¶ 8.) Miller stated that Stoian knew stolen identifications were used to fraudulently obtain the phones and laptops, knew Miller had been arrested, and requested Miller obtain multiple stolen identifications for "Angelo," who was providing Stoian with multiple phones weekly obtained from Verizon corporate accounts. (Doc. 85 at 4 ¶ 9; Doc. 90 ¶ 9.) Based on this information, Sandoval obtained warrants to track Stoian's movements via GPS, which showed multiple visits by Stoian to a business and office complex identified as "The Forum." (Doc. 85 at 5 ¶ 10; Doc. 90 ¶ 10.)

On September 10, 2018, Sandoval, while conducting surveillance on Stoian, observed Stoian and Plaintiff drive in Stoian's car to the Forum. (Doc. 85 at 5 ¶ 11; Doc. 90 ¶ 11.) Plaintiff Arik Bennett was identified as an associate of Stoian through Facebook photos and was also identified as a member or member manager of three LLC's—Cash

Panda, Tech Liquidators, and Titanium Tech—that also listed Stoian as a member. (Doc. 85 at 5 ¶¶ 12-13; Doc. 90 ¶¶ 12-13.) Further investigation revealed that Cash Panda had an office at The Forum in Suite 386, as identified by the label on the door. (Doc. 85 at 5 ¶ 14; Doc. 90 ¶ 14.)

In the free talks with Miller, while asking Miller about who he sells phones to, the following exchange occurred:

> **Sgt. James Burton**: Okay. Does Mike [Stoian] have associates?
> **Joseph Miller**: One.
> **Sgt. James Burton**: What's his name?
> **Joseph Miller**: Ari.
> **Sgt. James Burton**: Do you know his last name?
> **Joseph Miller**: No.
> **Sgt. James Burton**: If you saw a picture of him, could you take him out?
> **Joseph Miller**: Yeah.
> **Sgt. James Burton**: Have you ever sold to him?
> **Joseph Miller**: One or two times.
> **Sgt. James Burton**: Okay. So you have sold to him. So when you sold to him, did he know that the phones were obtained for fraudulently? Did you ever have those discussions with him? Did you ever text him back and forth or was [inaudible 00:18:05]
> **Joseph Miller**: No. It's basically, I would call and I would tell him, what, how much I have or how many phones I have or how many Mac Books or how many, whatever I have. And he would text me back an amount.
> **Sgt. James Burton**: He being . . .
> **Joseph Miller**: Well, basically I deal with Mike, unless Mike is out of town. Mike is out of town, then it's his partner.
> **Sgt. James Burton**: So you have his partner's phone? That's my question. I guess I wasn't clear, but you [sic] deal directly with the partner sometimes and directly with Mike sometimes.
> **Joseph Miller**: Correct.
> **Sgt. James Burton**: Okay.

(Doc. 90-6 at 11-12.) Later, the following conversation occurred:

> **Joseph Miller**: A friend of mine was out this way from Michigan and he had a phone that he was trying to sell. And he got on Craigslist. And basically the conversation that he had,

> he called a number on Craigslist and the conversation that he, it led me to believe that it was Mike based on the guy that was like, "Well, I'm not buying right." He was like, "How many do you have?" When he said he only had one phone, he was like, "Well, after I talked it over my partner, I'm not buying right now." So that led me to believe that it was Mike, because he has a partner and most people in this business, you don't need a partner.
> **Sgt. James Burton**: Partner is Ari?
> **Joseph Miller**: Ari.

(*Id.* at 15.)

Thereafter, Miller was asked about where the phones were stored:

> **Bill S.**: Mr. Miller, do you have any knowledge of where Mike and or Ari, someone named Arik, A-R-I-K, store their merchandise?
> **Joseph Miller**: They did store it at high rise, but they moved it. Now, I don't know. One possible scenario could be Mike's mom's house, which is north Scottsdale.
> **Sgt. James Burton**: Have you been there?
> **Joseph Miller**: Yes.
> **Bill S.**: What makes you think that?
> **Joseph Miller**: That's the only other place I know he lived down there in the thing. And I know they moved because I told him to clean house. So they can packed [sic] up all their stuff. Where they took it, I don't know, but I'm just giving a scenario of where it possibly could be.
> **Bill S.**: You've never been anywhere that other than the apartment and see merchandise, is the question?
> **Joseph Miller**: I never been in the merchandise to see the apartment. It's just that I have been in an apartment, but I never been [in] an apartment and saw merchandise.
> **Bill S.**: Can you describe the apartment? Was it a big apartment? Was it a small apartment?
> **Joseph Miller**: Well, when I first initially went in there, they weren't on the top floor. They were on a corner apartment. If you were coming from Hot and Juicy, if you know the place, if you look up, it'll be on the left side of the front. It's two towers, the front tower. And it was a corner one. I don't know if they added or move[d], but then they ended up with a penthouse. And I've been to one of their friend's penthouse, but not theirs, but they were exactly the same, but I've never been to their penthouse.

> **Bill S.**: So when you say you told them to clean house, when was that?
> **Joseph Miller**: The day I was arrested.

(*Id.* at 21-22.)

Sandoval engaged Miller on two occasions to sell purportedly stolen phones to Stoian. (Doc. 85 at 5 ¶ 15; Doc. 90 ¶ 15.) The investigation also led to the identifications of Brett Pinar and Abdallah Hamdan as individuals associated with Stoian, and detectives' observations of them during surveillance and GPS tracking were detailed in the warrant. (Doc. 85 at 5 ¶ 16; Doc. 90 ¶ 16.) The warrant detailed that the vehicle registered to Plaintiff's mother, which Plaintiff was observed operating on multiple occasions, was identified by GPS tracking signals as associated with The Forum, a FedEx store where packages were also picked up by Pinar, and an apartment at 115 W. 6th Street #2102, where both Plaintiff and Stoian were tenants until June of 2018, and which was rented under "Titanium Tech, LLC." (Doc. 85 at 5 ¶ 17; Doc. 90 ¶ 17.)

Further, the subpoenaed documents also showed that the lease for #2102 was taken over from Stoian by Roberto Carlos Marquez, an individual who was shown, through subpoenaed bank documents, to be wiring funds back and forth between his accounts and Titanium Tech accounts. (Doc. 85 at 5 ¶ 18; Doc. 90 ¶ 18.) Based on all of this information, as well as the additional information contained in the warrant, Sandoval opined that there was probable cause to believe Plaintiff was involved in money laundering, fraudulent schemes, participation in a criminal syndicate, and conspiracy, and applied for, and was granted, the warrant to search Plaintiff, his vehicle, and his apartment. (Doc. 85 at 6 ¶ 19; Doc. 90 ¶ 19.)

Sandoval was deposed, and testified that the entirety of his investigation, as well as part of the previous investigation regarding the stolen rental car, was contained in the 23-page warrant. (Doc. 85 at 6 ¶ 20; Doc. 90 ¶ 20.) Sandoval testified that there was no information obtained prior to applying for the search warrant that showed Plaintiff was not involved in the fraudulent obtaining and selling of cell phones. (Doc. 85 at 6 ¶ 23; Doc. 90 ¶ 23.) Plaintiff admitted he has no information that the information provided by either

Mr. Jennings or Mr. Miller was false. (Doc. 85 at 6 ¶ 26; Doc. 90 ¶ 26.)

**IV.  Discussion**

Defendant asserts that he is entitled to summary judgment because (1) Plaintiff did not have possession of the search warrant in question when he filed his First Amended Complaint, and therefore, none of the allegations relate to the remaining claim, and (2) even if Plaintiff's allegations related to the search warrant, Plaintiff has no evidence the warrant affidavit contained misrepresentations or omissions material to the finding of probable cause, nor has he made any "substantial showing" that any misrepresentations or omissions were made intentionally or with reckless disregard for the truth. (Doc. 84.) Plaintiff asserts that he is entitled to summary judgment because there was no probable cause nexus to search Plaintiff's home, person, or vehicle. (Doc. 80.)

**A.  Constructive Amendment of the Amended Complaint**

Defendant asserts that summary judgment should be granted in his favor because Plaintiff did not have a copy of Sandoval's affidavit at the time he filed his First Amendment Complaint, and the allegations contained in the First Amended Complaint have no nexus to the search warrant affidavit because Plaintiff mistakenly believed that the "Probable Cause Statement" was the basis for issuance of the warrant. Defendant asserts that the allegations in the First Amended Complaint as related to Sandoval's affidavit are blatantly incorrect and contradicted by the affidavit itself. Defendant asserts that Plaintiff had plenty of time to amend his complaint to add or change the allegations to comport with what was actually in the warrant affidavit, and to articulate what false statements or material omissions were actually contained therein, but he did not.

In Response, Plaintiff asserts that Defendant does not, and cannot, argue that he was surprised or prejudiced in defending the claims, and the parties litigated the sufficiency of the affidavit by apparent consent throughout discovery. Plaintiff further argues that the nature of the claims are the same.

Defendant did not address Plaintiff's arguments in his Reply.

The Ninth Circuit Court of Appeals has instructed that when issues are raised in opposition to summary judgment that are outside the scope of the complaint, the district court should construe them as seeking leave to amend pursuant to Rule 15 of the Federal Rules of Civil Procedure. *Desertrain v. Los Angeles*, 754 F.3d 1147 (9th Cir. 2014) (citation omitted).[1] In determining whether leave to amend should be given, the Court must consider "bad faith, undue delay, prejudice to the opposing party, futility of the amendment, and whether the plaintiff has previously amended the complaint." *Id.* (citation omitted).

Here, there is no argument that there was bad faith, prejudice, or futility, and Plaintiff only previously amended the Complaint once, and thus all of these factors favor Plaintiff. With regard to undue delay, the Court cannot find in favor of Plaintiff because Plaintiff had substantial time to seek to amend his Complaint, even after the deposition of Defendant Sandoval. Nonetheless, because the majority of the factors favor Plaintiff, the Court will deny Defendant summary judgment on the basis that the First Amended Complaint did not address the search warrant affidavit. *See* Fed. R. Civ. P. 15(b)(2) ("When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings. A party may move—at any time, even after judgment—to amend the pleadings to conform them to the evidence and to raise an unpleaded issue.").

---

[1] *But see Highfields Cap. I, LP v. SeaWorld Ent., Inc.*, No. 18-CV-1276-MMA (AGS), 2022 WL 1037210, at *24 (S.D. Cal. Apr. 6, 2022) ("it appears that there is no clear rule in the Ninth Circuit that amendment through summary judgment motion—after a Rule 16 scheduling order is in place—falls within the purview of Rule 15 and not Rule 16. Moreover, such a rule would render scheduling orders meaningless and effectively would read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure. Therefore, the Court is required to first apply Rule 16."). The Court agrees that Rule 16 should not be circumvented to seek amendment at the summary judgment stage, but the more recent cases cited by the *Highlands* Court are unpublished Ninth Circuit cases incapable of overruling *Desertrain*. Because Defendant did not brief this issue, the Court will apply the *Desertrain* analysis for the purpose of this Order.

**B.     Judicial Deception**

"To survive summary judgment on a claim of judicial deception, a § 1983 plaintiff need not establish specific intent to deceive the issuing court," but "the plaintiff must (1) establish that the warrant affidavit contained misrepresentations or omissions material to the finding of probable cause, and (2) make a "substantial showing" that the misrepresentations or omissions were made intentionally or with reckless disregard for the truth." *Bravo v. City of Santa Maria*, 665 F.3d 1076, 1083 (9th Cir. 2011). "To determine the materiality of omitted facts, [a court must] consider whether the affidavit, once corrected and supplemented, establishes probable cause." *Id.* at 1084 (internal citation omitted). "If probable cause remains after amendment, then no constitutional error has occurred." (*Id.*)

Moreover, with regard to misrepresentations or omissions, a Plaintiff "need only make a substantial showing of a deliberate or reckless omission, not provide clear proof." *Id.* at 1087 (internal citation omitted). "Summary judgment is improper where there is a genuine dispute as to the facts and circumstances within an officer's knowledge or what the officer and claimant did or failed to do." *Id.* (internal citation omitted).

Plaintiff asserts that when Defendant wrote his affidavit to obtain the search warrant, he: "(1) failed to place [Plaintiff] in Stoian's presence save for one innocuous occasion on September 10, 2018 (a month before the arrests and searches); (2) failed to put Plaintiff in the presence of any of the other named [Pinar, Hamdan and Marquez] or unnamed 'co-conspirators'; (3) failed to make any connection between Stoian's alleged scheme and [Plaintiff's] vehicle or residence; and (4) actually established that [Plaintiff] had no connection with the only entity the investigators confirmed might be a vehicle for Stoian's scheme, Mobile Tech Buyback, LLC." (Doc. 89 at 8-9.)  Plaintiff also asserts that investigators did not track any of the devices Stoian bought and Defendant does not know if any fraudulently obtained phones were in the boxes Pinar and Stoian collected from Ace Future Wireless, and did not include that Cash Panda was engaged in legitimate business (Doc. 89 at 9-11.)

Plaintiff asserts that in the search warrant affidavit, Defendant wrongfully included information that Plaintiff was seen getting out of a co-conspirator's Chrysler 300 sedan in a parking lot, but did not include that detectives never identified the person or persons who Plaintiff was seeing, or bothered to run the plates to identify the registered owner of the vehicle. (*Id.*)

Plaintiff asserts that "[t]he only alleged fact which could suffice to turn the otherwise innocent actions of Plaintiff set out in the affidavit into a nexus with Stoian's alleged schemes was Defendant's statement attributed to Miller" that "[t]he informant told investigators that Tasa-Bennett would meet with him to purchase fraudulently obtained iPhones when Stoian was unavailable." (*Id.* at 12.) Plaintiff asserts that Defendants failed to properly investigate by looking at the phone number Miller had for "Ari" or by asking Miller to identify "Ari" through a photo. (*Id.* at 13.) Plaintiff asserts that: "Defendant manipulated what Miller actually said, and concealed from the magistrate, (1) the few number of times that Miller reported he had actually met with 'Ari';[2] (2) that Miller had not confirmed to detectives that he sold stolen devices to 'Ari'; (3) that Miller had no knowledge that 'Ari' had any idea that the perhaps two or three phones 'Ari' collected in those one or two instances were, in fact, stolen; and (4) that Miller had not even identified Arik Bennett as this "Ari" despite agreeing that he could do so if supplied with a picture." (*Id.* at 15.)

Plaintiff asserts that in assessing whether there was probable cause, the Court must omit the statement that "[t]he informant told investigators that Tasa-Bennett would meet with him to purchase fraudulently obtained iPhones when Stoian was unavailable." Plaintiff further asserts that "in order to eliminate misleading implications in the reformed Affidavit, the Court must insert the following omissions:

---

[2] This contention is without merit. In the affidavit, Defendant wrote: During one of the free talks with Miller, he related to investigators that Stoian worked with a partner that he referred to as "Ari." Miller also related on ***two*** separate occasions, he sold product to "Ari" when Stoian was unavailable. (Doc. 81-1 at 12 (emphasis added).).

- 10 -

> 1. Detectives have made no connection between the observation of Mr. Bennett getting out of a tan Chrysler 300 and Stoian or any other of his co-conspirators. 2. Detectives have never placed Arik Tasa-Bennett in the company of Stoian but a single time, nor any of Stoian's named or unnamed coconspirators at any time during the investigation, whether in a public place, Mr. Bennett's vehicle, at The Forum nor at Mr. Bennett's residence on West Sixth. 3. The detectives have never observed or intercepted any communications between Mr. Bennett and Stoian or Miller; 4. Detectives have no evidence that Mr. Bennett is connected in any way with the company used by Stoian in his scheme, Mobile Tech Buyback, L.L.C. 5. Detectives have no evidence that Mr. Bennett had any communication with the Michigan company Ace Future Wireless, which they suspect has shipped fraudulently obtained phones to a post office box in the Scottsdale UPS; 6. Detectives have never seen Mr. Bennett pick up any boxes containing phones shipped from Ace Future Wireless or any other seller of electronic devices. 7. Detectives have never placed Stoian at the West Sixth Street dwelling at any time during the surveillance. Nor have they placed him at the office of Cash Panda in The Forum at any time.

(*Id.* at 16-17.)

Plaintiff further contends that the Court must insert the following information into the affidavit:

> The informant stated Stoian's associate was named "Ari." He did not have a last name, nor did he identify a photo of "Ari" during his free talks. The informant stated "Ari" had met him one or two times and bought phones. Detectives have no information as to the details of those one or two purchases that Miller claimed had been made by "Ari." When the informant was asked if "Ari" knew the phones he bought were fraudulently obtained, he did not confirm the detectives' suspicion. The informant stated that his communications with "Ari" were through texts, but detectives have not secured the informant's phone to corroborate his statement, or the substance of the communications. The detectives have not directed the informant to set up a "buy" with Ari, nor have him engage in any communication intended to corroborate the informant's statement.

- 11 -

1  (*Id.* at 17.)

2  Plaintiff's contention that the Court must read additional facts into the affidavit that
3  support a negative contention is unsupported. Plaintiff argues that investigators needed to
4  include information about investigations that they did not do, but Plaintiff has not made
5  any showing that information about investigations that were not done were in any way
6  material, and there is no support for the insinuation that the Magistrate Judge based the
7  decision to find probable cause on an assumption that other investigative activities that
8  were not included in the affidavit were done; indeed, it would have been improper to do
9  so.

10  Probable cause requires only "a probability or substantial chance of criminal
11  activity, not an actual showing of such activity." *Illinois v. Gates*, 462 U.S. 213, 243 n. 13
12  (1983). Indeed, "[w]hile an officer may not ignore exculpatory evidence that would negate
13  a finding of probable cause, once probable cause is established, an officer is under no duty
14  to investigate further or to look for additional evidence which may exculpate the accused."
15  *See, e.g.*, *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1147 (9th Cir. 2012) (internal
16  citations omitted); *Ewing v. City of Stockton*, 588 F.3d 1218, 1227 (9th Cir. 2009) ("Once
17  he has probable cause, an officer is not ordinarily required to continue to investigate or
18  seek further corroboration."). Here, Plaintiff's contentions that Defendants should have
19  conducted a better investigation and should have included information in the warrant
20  affidavit about how they could have conducted a better investigation do not establish that
21  these "omissions" were material to the finding of probable cause.

22  Plaintiff identifies two sentences of the affidavit that he claims are material
23  misrepresentations: (1) "[t]he informant told investigators that Tasa-Bennett would meet
24  with him to purchase fraudulently obtained iPhones when Stoian was unavailable" and (2)
25  Defendant wrongfully included information that Plaintiff was seen getting out of a co-
26  conspirator's Chrysler 300 sedan in a parking lot, but did not include that detectives never
27  identified the person or persons who Plaintiff was seeing, or bothered to run the plates to
28  identify the registered owner of the vehicle.

With regard to the statement that "[t]he informant told investigators that Tasa-Bennett would meet with him to purchase fraudulently obtained iPhones when Stoian was unavailable," this was a misrepresentation.  Although Defendant concluded that when the informant identified "Ari," he was referring to Plaintiff (Arik Tasa Bennett), the informant at no time told investigators that "Tasa-Bennett" would meet with him to purchase fraudulently obtain iPhones.

With regard to the assertion that "Defendant wrongfully included information that Plaintiff was seen getting out of a co-conspirator's Chrysler 300 sedan in a parking lot, but did not include that detectives never identified the person or persons who Plaintiff was seeing, or bothered to run the plates to identify the registered owner of the vehicle," the warrant affidavit contains no assertion that Plaintiff was meeting with a co-conspirator.  Rather, Defendant described an observation of Plaintiff's activity as follows:

> At approximately 1340 hours, data from the GPS tracking device on Tasa-Bennett's vehicle indicated he was at the Seville shopping center.[3]  Detectives conducting surveillance observed a tan, [sic] Chrysler 300 parked next to Tasa-Bennett's Nissan Altima.  At approximately 1347 hours, Tasa-Bennett is observed exiting the Chrysler from the front passenger seat with a black backpack over his shoulder and returns to his vehicle.  The GPS tracking device indicated Tasa Bennett returned to The Forum.

(Doc. 81-1 at 24-25.)  Plaintiff includes no argument that anything in this statement was untrue.  Accordingly, this statement will not be excised from the affidavit.

Because the statement that "[t]he informant told investigators that Tasa-Bennett would meet with him to purchase fraudulently obtained iPhones when Stoian was unavailable," is a misrepresentation, the Court must next consider whether the affidavit without that statement established probable cause.

---

[3] In the Affidavit, it is detailed that when Miller sold phones to Stoian, it was in the Seville shopping center parking lot and Stoian was observed getting into and then, a short time later, getting out of cars in the parking lot on several occasions.  (*See generally* Doc. 81-1.)

- 13 -

1          The Court will not set forth the entirety of the affidavit (Doc. 81-1 at 1-31), but these notable facts relate to the probable cause determination relating to Plaintiff: Stoian frequented the Forum office and business complex, and it was later determined that an LLC in which both Stoian and Plaintiff were members was located in the Forum; Stoian and Plaintiff had previously shared an apartment and been co-members of other LLCs; Miller identified "Ari" as Stoian's partner and met with "Ari" on two occasions during which "Ari" bought phones from Miller; Plaintiff's first name is "Arik" and he had multiple business relationships with Stoian; while observing Stoian, investigators saw him meet in parking lots and get into other's cars and then get out a short time later and return to his own car, and on the two occasions that investigators asked Miller to buy phones from Stoian, the exchanges occurred in this manner; Plaintiff was observed on one occasion pulling into a parking structure and getting into another person's car and then returning to his car a short time later; and Plaintiff was observed going to UPS and Fed Ex locations sometimes used by others who were engaged in the phone and laptop selling fraud. These facts, combined with the entire description of the investigation as detailed in the affidavit, establish probable cause to believe Plaintiff was involved in the fraudulent scheme even without the problematic statement that the informant identified Plaintiff to be "Ari."

         Although there may have been other, innocent explanations for Plaintiff's conduct described in the affidavit, Plaintiff has presented no evidence establishing that Defendant ignored exculpatory evidence. Rather, Plaintiff appears to contend that Defendant had a duty to look for evidence that may have exculpated Plaintiff, but "[o]nce he has probable cause, an officer is not ordinarily required to continue to investigate or seek further corroboration." *See, e.g., Ewing*, 588 F.3d at 1227 (citing cases); *Gates*, 462 U.S. at, 245 (By hypothesis, therefore, innocent behavior frequently will provide the basis for a showing of probable cause; to require otherwise would be to *sub silentio* impose a drastically more rigorous definition of probable cause than the security of our citizens demands. . . . In making a determination of probable cause the relevant inquiry is not

whether particular conduct is "innocent" or "guilty," but the degree of suspicion that attaches to particular types of non-criminal acts.").

Plaintiff also contends that there was no "nexus" between the areas to be searched and the warrant's probable cause, but Plaintiff makes no showing that Defendant made any misrepresentations relating to the areas to be searched in the warrant affidavit. "In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination because it is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment." *Messerschmidt v. Millender*, 565 U.S. 535, 547 (2012) (internal citation omitted). If a "magistrate acts mistakenly in issuing a warrant but within the range of professional competence of a magistrate, the officer who requested the warrant cannot be held liable" *Id.* (internal citation omitted). Here, if Plaintiff was involved in the fraudulent phone scheme, a reasonable magistrate could have concluded that there was reason to believe that evidence of the scheme may have been found in Plaintiff's mother's car (which the affidavit supported Plaintiff frequently used), Plaintiff's home, and on Plaintiff's person. *See, e.g.*, *United States v. Kvashuk*, 29 F.4th 1077, 1086 (9th Cir. 2022) ("[P]robable cause to believe that a person *conducts* illegal activities in the place where he is to be searched is not necessary; the proper inquiry is whether there was probable cause to believe that *evidence* of illegal activity would be found in the search.").

For all for all of the foregoing reasons, summary judgment will be granted in favor of Defendant.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is withdrawn as to Plaintiff's Motion for Summary Judgment (Doc. 80) and Defendant's Motion for Summary Judgment (Doc. 84).

(2) Defendant's Motion for Summary Judgment (Doc. 84) is **granted**.

(3) Plaintiff's Motion for Summary Judgment (Doc. 80) is **denied**.

(4) The action is terminated with prejudice. The Clerk of Court must enter judgment accordingly.

Dated this 17th day of August, 2022.

Honorable Steven P. Logan
United States District Judge